593 A.2d 716

CONSTANCE HOLLOWAY, PLAINTIFF, v. STATE OF NEW JERSEY, DEFENDANT AND THIRD–PARTY PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. MUSKIN CORPORATION; MUSKIN, INC.; KDI SYLVAN POOLS, INC.; AND PELICAN SWIM AND SKI CENTER, INC., THIRD–PARTY DEFENDANTS AND FOURTH–PARTY PLAINTIFFS–RESPONDENTS AND CROSS–APPELLANTS, v. SK PLASTICS CORPORATION, FOURTH–PARTY DEFENDANT.

Argued January 3, 1991—Decided July 29, 1991.

388

*Benjamin Clarke,* Deputy Attorney General, argued the cause for appellant and cross-respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel).

*William T. Connell,* argued the cause for respondents and cross-appellants Muskin Corporation and Muskin, Inc. (*Dwyer, Connell & Lisbona,* attorneys).

*James H. Knox* argued the cause for respondent and cross-appellant Pelican Swim & Ski Center, Inc. (*Gebhardt & Kiefer,* attorneys).

*Keith G. Von Glahn* argued the cause for respondent and cross-appellant KDI Sylvan Pools, Inc. (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys; *Karen H. Moriarty,* on the brief).

PER CURIAM.

This complex litigation arises from a swimming pool accident that left a prison inmate crippled. The prisoner sued the State under the Tort Claims Act. The State in turn impleaded various third-party defendants involved in the manufacture and distribution of the pool, asserting that they were liable under principles of negligence and strict products liability. Its actions against those so-called "pool defendants" included claims for indemnification and contribution as well as a direct claim for reimbursement of substantial medical expenses the State had incurred in the care of the prisoner. The issues on this interlocutory appeal are whether the State's claim against the pool defendants for reimbursement of the medical expenses is barred by the statute of limitations; whether the pool defendants can be liable to the State for indemnification and contri-

bution based on strict products liability when the prisoner's claim for damages against the State is based on tortious conduct under the Tort Claims Act; and whether application of the principles of comparative negligence, which may reduce or bar the State's claim for contribution, requires a comparison between the fault of the State alone and the pool defendants or between that of the prisoner and all defendants, including the State.

I

In July 1981, Constance Holloway, a prisoner incarcerated in a state correctional facility, fractured her neck during a recreation period when she dove into an above-ground pool and struck the bottom. As a result, she is a quadriplegic. Holloway dove from a deck that extended part-way around the pool. The State alleges that the pool, manufactured by Muskin Corporation (Muskin), contained inadequate warnings against diving activity, and that the deck, which the State had built, resembled a model sold by Muskin. The State further alleges that a Muskin sales catalogue, depicting a child diving, promoted the notion that decks made suitable diving platforms.

The case's complexity inheres in its procedural posture. In September 1983, Holloway filed suit for personal injuries under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, alleging that the State had acted negligently and had maintained a dangerous condition on its property. Her complaint sought damages, including substantial medical expenses. Although her claim was filed more than two years after the accident, it was not foreclosed by the two-year statute of limitations because the Tort Claims Act, at the time, barred prisoners' actions against the State until after release. *N.J.S.A.* 59:5–3. (That provision of the Tort Claims Act was declared unconstitutional in *Holman v. Hilton*, 542 *F.Supp.* 913 (D.N.J.1982), *aff'd*, 712 *F.*2d 854 (3rd Cir.1983), and was repealed by *L.*1988, *c.* 55, § 1.)

One year after Holloway sued the State, the State filed third-party complaints against Muskin and KDI Sylvan Pools, Inc., the distributor of the pool. The first count demanded contribution for their contributory negligence conditional on the State's payment of judgment to Holloway, while the second alternatively sought indemnification because the State could be liable only vicariously or secondarily for Holloway's injuries. Approximately one year after filing that third-party complaint, in August 1985, the State filed an amended third-party complaint against the retailer of the replacement pool liner, Pelican Swim and Ski Center (Pelican), for indemnification and contribution. Pelican in turn filed a fourth-party complaint against the manufacturer of the replacement pool liner, SK Plastics Corporation (SK). Finally, in November 1987, over six years after the accident, the State filed a second amended third-party complaint against the third-party defendants as well as SK, claiming that all of those parties, generally referred to as the "pool defendants," were liable for Holloway's damages based on negligence, strict products liability, and breach of warranties. In addition, the State claimed for the first time that each was directly liable to it for reimbursement of the medical expenses it had incurred on behalf of Holloway. Those medical expenses totaled over $1,000,000 at the time of Holloway's parole in 1990.

Shortly before trial, in the Spring of 1989, the pool defendants moved for summary judgment on the State's claims for contribution and indemnification that were based on strict products liability. The court dismissed all claims based on strict products liability, reasoning that because Holloway was barred from suing the State on that theory pursuant to the Tort Claims Act, *N.J.S.A.* 59:9–2(b), the State similarly could not assert any claims based on it. The court also ruled that the State's direct claim for reimbursement of medical expenses was time-barred because it had not been instituted within the two-year period of limitations for tort-based claims under *N.J.S.A.* 2A:14–2. The trial court further rejected the State's argument based on the

doctrine of *nullum tempus occurrit regi* (*nullum tempus*), which renders statutes of limitations inapplicable to the State.

The trial court issued two additional rulings applying principles of comparative negligence to the State's claims against the pool defendants. With respect to the claim for contribution, it held that if the State should be found liable to Holloway, it could not recover contribution from a third-party defendant if the percentage of fault of the State alone exceeded that of the particular third-party defendant. With respect to the State's direct claim for the medical expenses, the court stated that if that claim were reinstated, the State would be unable to recover from a third-party defendant if the combined percentage of fault attributable to the State and Holloway exceeded the percentage of fault of that defendant.

The Appellate Division, on interlocutory appeal, reversed the trial court's ruling that dismissed the State's claim for reimbursement of medical expenses as time-barred and reinstated the claim. 239 *N.J.Super.* 554, 560–61, 571 *A.*2d 1324 (1990). It also reversed the trial court's ruling that the State could not pursue a theory of strict products liability in its contribution or indemnification actions and reinstated those claims. *Id.* at 559–60, 571 *A.*2d 1324. The Appellate Division affirmed the trial court's separate rulings with respect to the application of principles of comparative negligence to both the State's claim for contribution and its direct claim for medical expenses. *Id.* at 561–62, 571 *A.*2d 1324. We granted certification, 122 *N.J.* 194, 584 *A.*2d 252, 253 (1990).

II

Relying primarily on theories of negligence and strict products liability, the State advances what it describes as a "direct claim" against the pool defendants for reimbursement of medical expenses incurred for Holloway's care during her confinement. That direct claim would arise in a situation where the State is not liable to Holloway but where the pool defendants

would have been liable to Holloway had she sued them. The Appellate Division determined that that claim was not dependent on any cause of action that Holloway had or might have had, and, applying the doctrine of *nullum tempus*, ruled that the claim was not time-barred. 239 *N.J.Super.* at 560–61, 571 *A.*2d 1324. We disagree.

The State contends, and no party disputes, that it has a duty to provide medical care to its prisoners and that it paid for Holloway's medical care pursuant to that duty. *Saint Barnabas Medical Center v. County of Essex*, 111 *N.J.* 67, 74, 543 *A.*2d 34 (1988). That the State has an obligation to provide for the health, safety, and well-being of persons incarcerated in its correctional facilities is generally acknowledged, whether that duty be founded on constitutional or common-law principles governing the State's responsibility for those remitted to its care or reasonably implied from statutes authorizing the custodial care of prisoners. 72 *C.J.S. Prisons* §§ 63–90 (1987). That obligation includes necessary medical and health care. The Appellate Division characterized the duty as "absolute." 239 *N.J.Super.* at 562, 571 *A.*2d 1324.

The State asserts that its duty to provide a prisoner such as Holloway with needed medical care is independent from, and is not based on, any tort duty it might otherwise owe its prisoners. The Appellate Division apparently believed that that absolute duty to Holloway gave rise to a direct claim for reimbursement of medical expenses that was not dependent on Holloway's right to claim those expenses from any third person. It concluded: "Even though the reimbursement action arises out of an injury to a person whose own claim was time-barred at the time the State filed, the State's claim is independent and survives." 239 *N.J.Super.* at 561, 571 *A.*2d 1324. We reject that analysis and conclusion.

The flaw in the court's approach is its assumption that because the State's obligation to Holloway is "absolute" and in no way conditioned or limited by any tort duty it otherwise

owes Holloway, any obligation of the third-party pool defendants for those expenses is similarly absolute and unconditional. That the obligation of the pool defendants to pay such medical expenses must be founded on their duty in tort to Holloway, however, is clear.

Throughout the appellate stages of the present litigation and at oral argument, the State has variously suggested that its claims for medical expenses can be considered within the framework of subrogation. It has contended that the fulfillment of its obligation to pay for the medical care of its prisoner is analogous to that of an insurer that is contractually obligated to pay the medical expenses or benefits on behalf of its insured. We agree.

In cases in which a party undertakes to pay for an injured person's medical care, there may be a paramount or parallel legal duty on the part of another, whether by contract, statute, or equitable principles derived from the common-law, to pay for those expenses. *Culver v. Insurance Co. of N. Am.*, 115 *N.J.* 451, 456, 559 *A.*2d 400 (1989). Thus, on payment of such expenses, the payor may retain a cause of action as subrogee against a responsible tortfeasor for reimbursement of the injured person's medical expenses. Subrogation is "highly favored in the law." *Standard Accident Ins. Co. v. Pellecchia*, 15 *N.J.* 162, 171, 104 *A.*2d 288 (1954) (citing *Schmid v. First Camden Nat'l Bank*, 130 *N.J.Eq.* 254, 266, 22 *A.*2d 246 (Ch. 1941)). It is "a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it * * * It is most often brought into play when an insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party." *Id.* (citations omitted).

We have no doubt that given the absence of a statutory right of subrogation in these circumstances, the State has, as a matter of equity and fairness, the implied right of subrogation. The State correctly notes that its implied entitlement to be

reimbursed for the medical expenses by way of subrogation finds persuasive support by reference to the medical payment scheme under the Medical Assistance and Health Services Act (Medicaid Act), *N.J.S.A.* 30:4D–1 to –42. That Act obligates the State to provide medical care for the needy. It grants the State a wide variety of rights, including the right to sue as subrogee or assignee of the recipient's claim against third-party wrong-doers, *N.J.S.A.* 30:4D–7.1a. The statute exemplifies an application of principles of subrogation that are relevant to this case. *See Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 485, 388 *A.*2d 603 (1978) (Subrogation " 'has become more general in its application, the principle being modified to meet the circumstances of the individual case' " (quoting *Bater v. Cleaver,* 114 *N.J.L.* 346, 353, 176 *A.* 889 (E. & A.1935)).).

In concluding here that the State had a claim for medical expenses against third-party defendants not subject to their defenses against Holloway, the Appellate Division relied on an analogy to the parent-child relationship. 239 *N.J.Super.* at 562, 571 *A.*2d 1324. It did so, however, in a different context, namely, whether the State's recovery should be diminished or defeated by a comparison of its fault combined with that of Holloway. *Id.* We find the parent-child analogy inapposite. The independent parental right of recovery reflects the strong public policy in protecting the family unit and is premised on the principle that a duty of reasonable care is one that embraces the entire family and is owed directly to both the parents and the children. *Schroeder v. Perkel,* 87 *N.J.* 53, 66, 432 *A.*2d 834 (1981). Third persons who injure one member of a family injure the entire family. *Id.* at 63–64, 432 *A.*2d 834. The State and its prisoners do not constitute a familial group. Persons who tortiously injure a prisoner do not ineluctably also breach a duty to the State.

Thus, although the State characterizes its claim for the reimbursement of medical expenses as a direct claim against the pool defendants, the State's claim for medical expenses should be treated as one based on the equitable principle of

subrogation. That claim cannot be viewed as one independent of whatever entitlement Holloway would have against those defendants to recover those expenses.

Because any claim of Holloway, the subrogor, is out of time, the State's claim for reimbursement of its medical expenses in these circumstances is similarly time-barred. As the right of subrogation turns on the obligation or duty that the third party itself owes the subrogor, subrogation is wholly dependent on the merits of the subrogor's claim against the third party. The subrogee, which succeeds to the position of the subrogor, may recover only if the subrogor likewise could have recovered; the subrogee gains no additional rights and is subject to all defenses that were available against the subrogor. *Aetna Ins. Co. v. Gilchrist Bros.*, 85 *N.J.* 550, 560–61, 428 *A.*2d 1254 (1981); *Montefusco Excavating & Constructing Co. v. County of Middlesex*, 82 *N.J.* 519, 523, 414 *A.*2d 961 (1980); *Hartford Fire Ins. Co. v. Riefolo Constr. Co.*, 81 *N.J.* 514, 524, 410 *A.*2d 658 (1980); *George M. Brewster & Son v. Catalytic Constr. Co.*, 17 *N.J.* 20, 28, 109 *A.*2d 805 (1954); *Pellecchia, supra*, 15 *N.J.* at 172–73, 104 *A.*2d 288. Courts therefore have generally recognized that the cause of action for subrogor and subrogee accrues at the same time. *Employers Liab. Assurance Corp. v. Haidt*, 6 *N.J.* 471, 79 *A.*2d 308 (1951); *Glass v. Spaits*, 221 *N.J.Super.* 643, 646, 535 *A.*2d 561 (Law Div.1987). *See generally* Annotation, *When Does the Statute of Limitations Begin to Run upon an Action by Subrogated Insurer Against Third–Party Tortfeasor*, 91 *A.L.R.*3d 844, 847 (1979). Holloway's claims against the pool defendants accrued at the time of her injury in July 1981, *N.J.S.A.* 2A:14–2, and the two-year statute of limitations on her claim expired in July 1983. Although at the time of the accident, *N.J.S.A.* 59:5–3 suspended Holloway's right to sue the State, it did not in any way toll the statute of limitations with respect to her cause of action against the pool defendants. Hence, under settled principles of subrogation, because the State did not directly claim reimbursement

for the medical expenses from the pool defendants until 1987, its subrogation action is time-barred.

That result is not altered by the doctrine of *nullum tempus*. We have recently considered that doctrine: *New Jersey Educational Facilities Authority v. Gruzen Partnership*, 125 *N.J.* 66, 592 *A.*2d 559 (1991), and *Devins v. Borough of Bogota*, 124 *N.J.* 570, 592 *A.*2d 199 (1991). For present purposes, we note simply that *nullum tempus* provides that the statute of limitations does not run against the sovereign. *Devins, supra*, 124 *N.J.* at 575, 592 *A.*2d 199. The primary rationale behind the doctrine is that the public should not suffer by the negligence of the sovereign's servants. *Id.* at 576–577, 592 *A.*2d 199 *New Jersey Educ. Facilities Auth. v. Conditioning Co.*, 237 *N.J.Super.* 310, 316, 567 *A.*2d 1013 (App.Div.1989), *aff'd sub. nom. New Jersey Educ. Facilities Auth. v. Gruzen Partnership, supra*, 125 *N.J.* 66, 592 *A.*2d 559. In *Devins* and *New Jersey Educational Facilities Authority*, we expressly determined that *nullum tempus* no longer would be applicable to governmental claims.

We have in other contexts refused to apply *nullum tempus* with respect to claims of the State that are wholly derivative. *See, e.g., State by Van Riper v. Atlantic City Elec. Co.*, 23. *N.J.* 259, 271, 128 *A.*2d 861 (1957) (State's escheat action for unclaimed deposits made by customers of a utility company was derivative and was barred because statute of limitations barred. the customers from demanding return of the deposits); *State v. Standard Oil Co.*, 5 *N.J.* 281, 298, 74 *A.*2d 565 (1950), *aff'd*, 341 *U.S.* 428, 71 *S.Ct.* 822, 95 *L.Ed.* 1078 (1951) (same); *see also State by Parsons v. United States Steel Corp.*, 22 *N.J.* 341, 350, 126 *A.*2d 168 (1956) ("Limitations operate not against the State *per se*, but against the basic claim of the unknown owner. If, by virtue of limitations, the owner can obtain nothing, the State is under like disability."). In other contexts, courts have reached a different result. *E.g., Veterans Loan Auth. v. Wilk*, 61 *N.J.Super.* 65, 160 *A.*2d 138 (App.Div.1960); *New Jersey Higher Educ. Assistance Auth. v. Carlock*, 247 *N.J.Super.* 471,

589 *A.*2d 671 (Law Div.1991). Those decisions, however, do not persuade us to alter the analysis that governs the State's entitlement in this case. Those decisions involved commercial contractual obligations arising in the context of comprehensive programs in which the State had a clear and definite interest. In those cases, respectively, private banks provided loans guaranteed by the government to veterans and students. As the State's interest was implicit in the original obligation and apparent in the underlying statutory schemes, it was not inequitable to decline to apply the statute of limitations. In contrast, a party owing a common-law tort duty to another has no reason to foresee or expect any underlying governmental interest that would expand its direct duty to encompass that concern.

■ Because the State's claim in this case is founded on equitable principles of subrogation, we are satisfied that *nullum tempus,* a common-law doctrine, should not be invoked to energize that claim. The fundamental principle of subrogation is that the subrogee's rights rise no higher than those of the subrogor. *Supra,* 124 N.J. at 578, 592 *A.*2d 199. Although granting the State a claim based on subrogation against third-party defendants would be fair and equitable, allowing the State to assert that claim without "due regard to the legal and equitable rights of others," *Pellecchia, supra,* 15 *N.J.* at 172, 104 *A.*2d 288, including defenses that attach to the underlying cause of action, would not be. Moreover, in our recent decisions we abandoned the common-law doctrine of *nullum tempus. New Jersey Educ. Facilities Auth., supra,* 125 *N.J.* 66, 592 *A.*2d 559; *Devins, supra,* 124 *N.J.* 570, 592 *A.*2d 199. Our decisions concluded that the abandonment of that doctrine should be prospective only. *New Jersey Educ. Facilities Auth., supra,* 125 *N.J.* at 75–76, 592 *A.*2d 559; *Devins, supra,* 124 *N.J.* at 580–581, 592 *A.*2d 199. In this case, however, the State seeks an unusual, if not unprecedented, application of the doctrine. The considerations that have impelled us to dispense with *nullum tempus* militate strongly against a novel exten-

sion of the doctrine to tort claims based on subrogation.

In concluding that the State's direct claim for reimbursement for its medical expenses by way of subrogation is barred by the statute of limitations, we note that the State has also variously contended that its entitlement to those medical expenses in whole or in part is encompassed by its claims for indemnification and contribution. We agree. As earlier noted, Holloway sued the State for damages, including her medical expenses. The State in suing the pool defendants referred to Holloway's claim and sought indemnification and contribution based on any judgment that Holloway might obtain against it. A plaintiff's reasonable medical expenses ordinarily constitute part of that judgment. _Long v. Landy_, 35 _N.J._ 44, 55–56, 171 _A._2d 1 (1961).

The Appellate Division observed without explanation that _nullum tempus_ "applies to tort actions by the State for contribution and indemnification." 239 _N.J.Super._ at 560, 571 _A._2d 1324. We need not further address that proposition because we are satisfied that those claims are not otherwise barred by the statute of limitations. With respect to indemnification, see, _e.g., McGlone v. Corbi_, 59 _N.J._ 86, 94–95, 279 _A._2d 812 (1971) (cause of action for indemnification accrues at time judgment is rendered against indemnitee for underlying claim); _Adler's Quality Bakery, Inc. v. Gaseteria, Inc._, 32 _N.J._ 55, 80–81, 159 _A._2d 97 (1960) (same); _United New York Sandy Hook Pilots Association v. Rodermond Industries_, 394 _F._2d 65, 75 (3d Cir.1968) (cause of action for indemnification accrues when liability fixed by judgment against or payment by indemnitee); _Wolverine Insurance Co. v. Tower Iron Works, Inc._, 370 _F._2d 700, 703 (1st Cir.1966) (cause of action for indemnification accrues when indemnitee suffers loss by paying injured person). With respect to contribution, see, _e.g., McGlone, supra_, 59 _N.J._ at 94–5, 279 _A._2d 812 (cause of action for contribution accrues when judgment recovered against defendant); _Pennsylvania Greyhound Lines v. Rosenthal_, 14 _N.J._ 372, 382, 102

*A.*2d 587 (1954) (cause of action for contribution accrues on payment by joint tortfeasor of money judgment recovered against him for injurious consequences of wrong); *Sattelberger,* 14 *N.J.* 353, 366, 102 *A.*2d 577 (1965) (same).

We conclude that the State's separate claim for reimbursement of its medical expenses is barred by the statute of limitations. Its claims for all or part of those expenses based on indemnification and contribution are not barred. Our holdings make unnecessary to decide the issue of whether, in the State's direct claim for medical expenses, its degree of fault should be combined with that of Holloway and then compared to the fault of each pool defendant. We also do not resolve whether the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.4, modified the longstanding rule that a party at fault cannot maintain an action for subrogation. *Pellecchia, supra,* 15 *N.J.* at 172, 104 *A.*2d 288. *But cf. Kaplan v. Walker,* 164 *N.J.Super.* 130, 138–39, 395 *A.*2d 897 (App.Div.1978) (in absence of supervening equities, subrogee's negligence in context of commercial transaction will not bar relief).

## III

■ With respect to the State's claim for contribution, the Appellate Division relied on *Lee's Hawaiian Islanders, Inc. v. Safety First Products,* 195 *N.J.Super.* 493, 480 *A.*2d 927 (App. Div.1984), and held that for the purposes of comparison under the Comparative Negligence Act, the State was to be deemed a "plaintiff" and that its fault therefore must be compared to that of each pool defendant to determine whether the State could recover from that third-party defendant. 239 *N.J.Super.* at 561, 571 *A.*2d 1324. The State contends that that result is erroneous and that in the context of its contribution action only Holloway constitutes a "plaintiff" for the purposes of that comparison. We agree.

The Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –5, was enacted to promote the fair sharing of the burden of

judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim. *Kennedy v. Camp*, 14 *N.J.* 390, 398–99, 102 *A*.2d 595 (1954); *see Young v. Latta*, 123 *N.J.* 584, 589, 589 *A*.2d 1020 (1991). At the time that Holloway was injured, the Comparative Negligence Act provided that a plaintiff's percentage share of negligence was compared with each defendant's share in order to determine whether plaintiff's negligence barred recovery; the fault of multiple defendants was not combined for that comparison.[1] *N.J.S.A.* 2A:15–5.1. Thus, if the plaintiff's fault exceeded that of a defendant, that defendant was not liable. *Van Horn v. William Blanchard Co.*, 88 *N.J.* 91, 438 *A*.2d 552 (1981).

The State correctly observes that the policies of the Joint Tortfeasors Contribution Law, as modified by the principles of comparative negligence, would be defeated if the fault of the contribution-claimant or plaintiff-in-contribution were compared to that of the defendant-in-contribution. If that were the required comparison, a joint tortfeasor arbitrarily or capriciously could be compelled to pay more than its fair share of the judgment to the injured or real plaintiff.[2] That consideration impliedly explains why the fault of the plaintiff-in-contribution vis-a-vis defendants-in-contribution is deemed "comparative negligence" relevant only in determining the amount and respective shares of contribution, and is not considered "contributory negligence" that can bar the remedy of contribution. *E.g., Sattelberger, supra*, 14 *N.J.* 353, 102 *A*.2d 577 (under Joint Tortfeasors Contribution Law, contribution-claimant entitled to seek contribution even though, by definition, he was at fault).

---

[1]The Legislature subsequently modified *N.J.S.A.* 2A:15–5.1 to provide that the negligence of the person seeking recovery should be compared to the combined negligence of the persons against whom recovery is sought.

[2]We note that the recent modification of the Comparative Negligence Act that limits the ability of an injured party to collect the entire judgment from a defendant only partially at fault applies only to causes of action arising after December 18, 1987, and therefore does not apply here. *N.J.S.A.* 2A:15–5.3.

■ We further believe that the procedural status of a defendant-in-contribution—whether as a third-party defendant-in-contribution in a separate action, see, *e.g.*, *id.*, a third-party defendant-in-contribution in the action establishing the underlying liability, or as a direct defendant and cross-claim defendant-in-contribution in the action establishing the underlying liability, see, *e.g.*, *Nora v. Township of Livingston*, 171 *N.J.Super.* 579, 410 *A.*2d 278 (App.Div.1980), neither alters nor modifies the rule that the injured party's negligence should be compared with that of each joint tortfeasor. How joint tortfeasors arrive at the litigation should not affect the substantive right of contribution. *Sattelberger, supra*, 14 *N.J.* at 369–72, 102 *A.*2d 577; *Markey v. Skog*, 129 *N.J.Super.* 192, 200, 322 *A.*2d 513 (Law Div.1974). That point is confirmed by *Lee's Hawaiian Islanders, Inc., supra*, 195 *N.J.Super.* at 506, 480 *A.*2d 927: "[I]f plaintiff chooses to sue only one joint tortfeasor and that joint tortfeasor is consequently compelled to bring his own contribution action against other tortfeasors, he should in the contribution action be both entitled to and burdened by the same contribution consequences which would have obtained had plaintiff himself sued both tortfeasors."

The pool defendants contend that in the application of the Joint Tortfeasor Contribution Law, the Comparative Negligence Act requires a comparison of fault between the joint tortfeasor who is the plaintiff-in-contribution and any other joint tortfeasor who is a defendant-in-contribution. They cite *N.J.S.A.* 2A:15–5.1 (since amended), entitled "Recovery of damages for negligence resulting in death or injury" to support their position. In 1981, that statute provided:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought.

Fairly read, however, the statute is referring to the contributory negligence of the actual plaintiff—the person seeking to recover damages for negligence "resulting in death or injury to

person or property." It is not referring to a tortfeasor seeking to allocate or share that liability with other tortfeasors. That reading is reinforced by reference to section 5.3 of the Comparative Negligence Act—entitled "Recovery of full amount of verdict; contribution from other tortfeasors"—which provides, "Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors." *N.J.S.A.* 2A:15-5.3. Thus, we adhere to our past teaching that the effect of the Comparative Negligence Act on the right to contribution is to measure the remedy of contribution by percentage of responsibility rather than by the number of culpable parties. *Cartel Capital Corp. v. Fireco of New Jersey*, 81 *N.J.* 548, 569, 410 *A.*2d 674 (1980); *Rogers v. Spady*, 147 *N.J.Super.* 274, 277, 371 *A.*2d 285 (App.Div.1977).

Accordingly, we reverse so much of the judgment of the Appellate Division as addresses the State's claim for contribution and hold that in that claim the proper comparison is the fault of each third-party defendant with that of Holloway.

## IV

The final issue is whether the State's potential liability under the Tort Claims Act bars its recovery against the pool defendants based on strict products liability.

The pool defendants assert that for Holloway to recover in her suit, she must prove that the State's conduct was "palpably unreasonable," *see N.J.S.A.* 59:4-2 (for State to be liable for maintaining dangerous condition on its property, plaintiff must establish that State acted in palpably unreasonable manner), and that such conduct, as a matter of law, cannot be objectively foreseeable. *Brown v. United States Stove Co.*, 98 *N.J.* 155, 166-67, 484 *A.*2d 1234 (1984). We previously have indicated that "palpably unreasonable" implies "behavior that is patently unacceptable under any circumstance" and that "it must be manifest and obvious that no prudent person would approve of

its course of action or inaction." *Kolitch v. Lindedahl,* 100 *N.J.* 485, 493, 497 *A.*2d 183 (1985) (citations omitted).

The Appellate Division rejected the pool defendants' contention, as do we. It stated:

> It is unclear whether plaintiff's case will target the dangerous condition of State property, failure to warn, or negligent supervision of prisoners' activities, or all of them. It is thus not necessarily so that the State can be held liable only if its conduct was palpably unreasonable. Secondly, "palpably unreasonable" does not necessarily mean "very" negligent, "grossly" negligent or "extraordinarily" negligent. Thirdly, a products liability defendant may be held liable even in the event of product misuse, if the misuse was objectively foreseeable (citing *Brown, supra,* 98 *N.J.* 155 [484 *A.*2d 1234]). We cannot say that as a matter of law the State's conduct in this case was not foreseeable. [239 *N.J.Super.* at 560, 571 *A.*2d 1324.]

## V

We affirm in part and reverse in part the judgment of the Appellate Division.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.