**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3831-22

JAMES WEISS,

     Plaintiff-Appellant,

v.

BOROUGH OF FRANKLIN
LAKES, FIRE DEPARTMENT
OF FRANKLIN LAKES and
ALTONA BLOWER & SHEET
METAL,

     Defendants-Respondents,

and

BOROUGH OF FRANKLIN
LAKES and FIRE DEPARTMENT
OF FRANKLIN LAKES,

     Defendants-Third-Party
     Plaintiffs,

v.

ALTONA BLOWER & SHEET
METAL,

     Defendant-Third-Party

Defendant.

_____

Submitted January 8, 2025 – Decided July 31, 2025

Before Judges Rose, DeAlmeida, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1946-21.

Dario, Albert, Metz, Canda, Concannon, & Ortiz, attorneys for appellant (Patrick M. Metz, on the brief).

Pfund McDonnell, PC, attorneys for respondents Borough of Franklin Lakes and Fire Department of Franklin Lakes (Mary C. McDonnell and David Pfund, on the brief).

Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, attorneys for respondent Altona Blower & Sheet Metal Works (Alexander Krasnitsky, on the brief).

PER CURIAM

Plaintiff James Weiss appeals from three Law Division orders in this matter arising from a construction accident: (1) the January 20, 2023 order granting summary judgment in favor of defendant Altona Blower & Sheet Metal Works (Altona);[1] (2) the June 26, 2023 order granting summary judgment in favor of defendants Borough of Franklin Lakes (Borough) and Fire Department

---

[1] Although plaintiff identifies Altona as Altona Blower & Sheet Metal Works in the body of the amended complaint, he identifies it as Altona Blower & Sheet Metal in the caption of the amended complaint.

of Franklin Lakes (FDFL), a division of Borough government, (collectively the Municipal Defendants); and (3) the August 10, 2023 order denying his motion for reconsideration. We affirm.

## I.

Plaintiff, a retired firefighter of almost thirty years, was employed by Altona, which was in the business of custom metal fabrication, steel work, and welding. He was a metal fabricator, steel worker, and product manager.

On or about June 12, 2019, at the request of the Borough, Altona prepared an estimate for the fabrication and installation of a steel bailout simulator to be mounted on top of an existing shipping container in the rear yard of the FDFL headquarters. The simulator, which was composed of a wall with a window, was intended for training firefighters to escape through a window of a burning structure.

On December 10, 2019, the Borough accepted Altona's estimate and issued a purchase order for $4,300 for the construction and installation of the simulator. Plaintiff was tasked by Altona with designing, constructing, and installing the device. Plaintiff was familiar with bailout simulators from his career as a firefighter. He visited the site prior to drafting the drawing and plans.

A-3831-22

Walter Martin, plaintiff's supervisor, approved the drawing and plans, which were forwarded to FDFL.

Plaintiff recommended constructing the simulator on-site because the container on which it was to be installed was over eight feet high. He thought on-site construction would be safer than lifting a fully constructed, approximately three-hundred-pound object from the ground to the top of the container. Martin disagreed with plaintiff's recommendation because it would take longer to construct the simulator on-site. He directed plaintiff to construct the device at Altona and transport the completed simulator to FDFL headquarters for installation. No employee, official, or volunteer of the Borough or FDFL was involved in the design, engineering, selection of materials, construction, or installation of the simulator.

On January 15, 2020, plaintiff and two other Altona employees arrived at FDFL headquarters to install the fully constructed simulator. Plaintiff acted as the on-site supervisor for the project. No employee, official, or volunteer of the Borough or FDFL was present during installation of the simulator.

Plaintiff operated a mechanical lift that hoisted the eight-foot by eight-foot metal and wood simulator to the top of the container and held it in place while it was affixed to the container. The other two employees were on the

container attaching the simulator to three fabricated tabs affixed to the roof line of the container. Plaintiff remained on the ground tack welding the simulator to the container. The tack welding was intended to hold the simulator in place while gussets were attached to secure it permanently to the container.

Before the simulator was fully secured to the container, plaintiff removed the lift holding it in place. The temporary tack welds broke, possibly when a wind gust hit the simulator. The simulator fell from a height of eight-and-a-half feet, striking plaintiff in the head and torso, and pinning him beneath the device. Plaintiff, who was initially rendered unresponsive, was flown by helicopter to a trauma center for treatment. He suffered severe and permanent injuries. A police report notes none of the Altona workers were wearing safety helmets.

On March 23, 2021, plaintiff filed a complaint against the Municipal Defendants. He alleged they: (1) carelessly, recklessly, negligently, and palpably unreasonably failed to maintain a reasonably safe premises at FDFL headquarters; (2) created a dangerous condition by failing to train their employees to correctly construct, install, and supervise the installation of a bailout simulator, secure a professional consultant for the installation of the simulator, obtain plans and specifications for the project through a licensed engineer and other professionals, and adequately monitor the installation of the

simulator; (3) failed to comply with local, state, and federal laws and rules regarding the management and control of the construction and installation of the simulator; and (4) failed to comply with the Local Public Contracts Law, N.J.S.A. 40A:11-1 to -49, by not obtaining plans and specifications for construction and installation of the simulator and competitive bids for the project.

On November 30, 2021, the Municipal Defendants filed a third-party complaint against Altona, alleging breach of contract, breach of warranties, and a right of indemnification for any damages awarded on plaintiff's claims.

On August 24, 2022, Martin testified about his understanding, obtained from reports of Altona employees, of what happened at FDFL headquarters on the day plaintiff was injured. According to Martin, once the simulator was lifted to the top of the container, it was tack welded to the container from the outside only. Martin testified the simulator should have been tack welded to the container from both sides. After the inadequate tack welding, plaintiff told the other employees the simulator was securely fastened to the container. The other employees disagreed. Plaintiff, however, removed the lift holding the wall in place. A wind gust caused the weld tabs to break and the wall to fall. Martin testified he could not "believe that three guys would take that lift out with that

– in that position. That was the whole problem right there." Martin opined the decision to remove the lift "blows my mind. It's such a poor judgment call."

On September 30, 2022, plaintiff moved for leave to file an amended complaint naming Altona as a defendant. The court granted the motion.

On November 15, 2022, plaintiff filed an amended complaint, which reiterated the allegations in the original complaint and added Altona as a defendant. In some instances, the addition of Altona as a defendant was incongruous. For example, plaintiff alleged Altona was a public entity and owned and possessed the FDFL headquarters. In addition, plaintiff alleged he served a notice of tort claim against Altona, a private entity, pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to 8-11. Although not mentioned in the amended complaint, plaintiff in effect alleged his claims against Altona were not barred by the Workers' Compensation Act (WCA), N.J.S.A. 34:15-1 to -146, because Altona and its employees engaged in "intentional wrongs" that resulted in plaintiff's injuries. See N.J.S.A. 34:15-8 (barring a worker from filing a tort claim against his or her employer for injuries incurred during the course of employment, except where the injuries are the result of the employer's "intentional wrong."); Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 622-23

(2002) (the "intentional wrong" exception applies when an employer acts "with knowledge that it was substantially certain that a worker would suffer injury.").[2]

On November 18, 2022, Altona moved for summary judgment. It argued plaintiff's claims were filed beyond the two-year limitations period in N.J.S.A. 2A:14-2. Plaintiff opposed the motion, arguing he did not discover Altona's intentional wrongs and, as a result, the basis to file suit against Altona, until Martin's August 24, 2022 deposition. Thus, plaintiff argued his cause of action against Altona did not accrue until August 24, 2022, shortly before he moved to file an amended complaint on September 30, 2022.

On January 20, 2023, the motion court issued an oral decision granting Altona's motion, stating:

> [T]he [c]ourt has reviewed the papers and the motion is based on a violation of the statute of limitations. Here, the plaintiff did wait until September 30, 2022, nearly three years after the accident, nine months following the statute of limitations period lapsing, and one month before the close of discovery . . . to move for leave to amend the complaint. And then, plaintiff was fully aware that he could bring claims against Altona Blower & Sheet Metal since January of 2020, as it performed all of the work on the project and was his employer.
>
> Plaintiff may not be able to rely upon the relation back or fictitious party rules to overcome the statute of

---

[2] The record suggests plaintiff was awarded workers' compensation benefits for his injuries.

limitations bar. And with regard to the worker[s'] compensation bar, . . . [plaintiff] has[ not] laid out facts sufficient to satisfy Laidlow.

A January 20, 2023 order memorialized the court's decision.

On March 17, 2023, the Municipal Defendants moved for summary judgment. They argued they breached no duty to plaintiff, took no action that resulted in his injuries, and were immune from his claims under the TCA. Plaintiff opposed the motion, arguing the Municipal Defendants were not immune under the TCA because their failure to retain an engineer to approve the design of the simulator and supervise its installation created a dangerous condition on their property.

On June 26, 2023, the court issued a written decision granting the motion. The court found the Municipal Defendants were immune under the TCA. The court explained:

> Plaintiff does not allege the property was in a dangerous condition at the time of the injury; the facts as presented indicate [p]laintiff and his company appeared at the fire department to perform construction work and created the dangerous condition – a metal and wood wall affixed to a shipping container – themselves. Plaintiff's theory of liability is that the fire department proposed and approved the design of the bailout window that [p]laintiff himself drew and his supervisor reviewed, and that by approving the design, the fire department negligently contributed to the creation of the dangerous condition. Plaintiff argues the fire department should

9

have hired a design engineer rather than propose a design themselves.

The court continued:

> It must be noted that [p]laintiff and Altona – the professionals hired to draw the final design plan and perform the construction – apparently did not think to do so themselves despite admitting now that they had no experience constructing a bailout window. Plaintiff and Altona contracted themselves to design and construct a bailout window; their own failure to design a safe system and construct it safely cannot be projected on the fire department.

The court concluded, "[a]bsent allegations that the property itself was dangerous, [p]laintiff's activities on the property are not a 'dangerous condition' that would expose [d]efendant[s] to liability." A June 26, 2023 order memorialized the court's decision.

On June 26, 2023, plaintiff moved for reconsideration of the June 26, 2023 order. He argued the Municipal Defendants' failure to secure bids prior to contracting with Altona to design and install the simulator violated N.J.S.A. 40A:11-4.3 and public policy and the court overlooked his allegation that the FDFL property was in a dangerous condition.

On August 10, 2023, the court issued a written decision denying plaintiff's motion. The court found it did not overlook plaintiff's allegation of a dangerous condition at the FDFL property, but clarified plaintiff did not allege the property

was inherently dangerous. The court explained plaintiff alleged the installation of the simulator without the input and supervision of an engineer created a dangerous condition at the property.

In addition, the court found plaintiff was precluded from raising the new argument the Municipal Defendants violated N.J.S.A. 40A:11-4.3 in a motion for reconsideration. Although the court did not decide plaintiff's N.J.S.A. 40A:11-4.3 argument, it noted the Municipal Defendants' argument the $4,300 contract with Altona was below the statutory threshold for mandatory bidding and plaintiff offered no explanation of how a violation of N.J.S.A. 40A:11-4.3, if one occurred, was the proximate cause of his injuries.[3] An August 10, 2023 order memorialized the court's decision.

This appeal followed. Plaintiff argues the motion court erred when it: (1) ended oral argument on Altona's motion for summary judgment before his counsel finished his argument, violating plaintiff's due process rights; (2) concluded plaintiff's claims against Altona were time barred; (3) concluded plaintiff had not established the "intentional wrong" exception to the WCA's bar

---

[3] The court's decision referred to the amount of the contract as $4,800. That amount, however, was the estimate for construction of the simulator using aluminum. The Municipal Defendants elected to accept the $4,300 estimate for the construction of the simulator with other materials.

on his claims against Altona; (4) granted the Municipal Defendants summary judgment despite their violation of N.J.S.A. 40A:11-4.3; and (5) denied plaintiff's motion for reconsideration.

II.

A. Summary Judgment Orders.

We begin with plaintiff's appeal of the two orders granting summary judgment. We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal

analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

1.    January 20, 2023 Order.

We are not convinced plaintiff was denied procedural due process at the virtual hearing on Altona's summary judgment motion. Plaintiff argues before his attorney "present[ed] the crux of his argument in opposition to the [m]otion" the court "abruptly ended the virtual hearing." He argues the court violated his "fundamental right to be heard" as guaranteed by the Fourteenth Amendment. Altona counters that plaintiff mischaracterizes what happened at the hearing. We agree.

Plaintiff's argument is belied by the transcript of the January 20, 2023 hearing on Altona's motion, which was held virtually. The court first heard argument from Altona's counsel. It then stated, "I'll hear from plaintiff's counsel." Plaintiff's counsel then presented argument. After a short time, Altona's counsel asked, "[i]f I may respond to that, Judge?" The court responded, "[n]o. Thank you very much[,]" and proceeded to issue its oral decision, the entirety of which was delivered before the proceedings ended. The court did not abruptly end the virtual hearing.

In addition, there is no indication in the record the court stopped plaintiff's counsel before he completed his argument. After the court answered Altona's counsel's question, plaintiff's counsel did not ask to continue his argument. Nor did plaintiff subsequently move for reconsideration to argue the court overlooked any argument plaintiff made in his brief but did not raise at oral argument. Plaintiff's ability to inform the court of the basis for his opposition to Altona's summary judgment motion was not impeded.[4]

---

[4] Altona suggests plaintiff is confusing the January 20, 2023 virtual hearing with the June 26, 2023 virtual hearing on the Municipal Defendants' motion for summary judgment, which ended abruptly after a power outage at the court. Plaintiff's brief, however, unequivocally refers to the January 20, 2023 hearing. In addition, after Altona's suggestion of confusion of the two arguments, plaintiff did not file a reply brief stating he intended to base his argument on the abrupt termination of the June 26, 2023 hearing.

We turn to plaintiff's argument that the motion court erred when it found his claims against Altona were barred by the statute of limitations. Plaintiff was injured on January 15, 2020. "Ordinarily, a cause of action accrues at the time of the alleged injury. This is because, in most cases, awareness of one's injuries is immediate and knowledge that someone is at fault is inherent in the nature of the injury or the circumstances in which it occurred." Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 479 (D.N.J. 2002).

The statute of limitations for a claim arising from an injury caused by the wrongful act of another is two years. N.J.S.A. 2A:14-2. Two years from January 15, 2020 is January 15, 2022. Plaintiff, however, did not seek leave to file an amended complaint naming Altona as a defendant until September 30, 2022, more than eight months after the statute of limitations expired. Plaintiff argues the accrual of his claims against Altona was tolled by the discovery rule until Martin's August 24, 2022 deposition. Similar to the motion court, we disagree.

The discovery rule is grounded in "the unfairness of barring claims of unknowing parties," Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001) (quoting Mancuso v. Neckles, 163 N.J. 26, 29 (2000)), and tolls the running of a limitation period where "injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is

15

attributable to the fault of another," id. at 245-46 (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 66 (1998)).  "The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another."  Id. at 246.

As the Court explained:

> [K]nowledge of fault for purposes of the discovery rule has a circumscribed meaning:  it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.
>
> [Savage v. Old Bridge-Sayreville Med. Grp., P.A., 134 N.J. 241, 248 (1993).]

The standard is awareness of fault that is merely possible, not legally certain, provable, or probable.  Ibid.  In other words, the cause of action accrues when the claimant has "two pieces of information that are the key to the discovery rule, namely an injury and 'facts suggesting that a third party may be responsible.'"  Maher v. Cnty. of Mercer, 384 N.J. Super. 182, 188 (App. Div. 2006) (quoting Ayers v. Twp. of Jackson, 106 N.J. 557, 582 (1987)).

The record supports the motion court's finding that as of January 15, 2020, plaintiff was aware of the material facts surrounding the construction and installation of the bailout simulator and Altona's potential liability for his

16

injuries. Plaintiff knew he was employed by Altona, and that he designed, constructed, and attempted to install the simulator with two other Altona employees. He was aware he visited the FDFL property prior to the installation and his plans for the construction and installation of the simulator were approved by his supervisor. He also was aware his recommendation that the simulator be constructed on-site for safety reasons was rejected by Altona.

Plaintiff was aware the only other persons present at the installation were Altona employees and his employer did not retain an engineer to review the plans for the construction and installation of the simulator or monitor the installation. In addition, plaintiff was aware of the training, or lack therefore, he and the other Altona employees received on the installation of the simulator and knew Altona did not ensure he was wearing a safety helmet during the installation.

While plaintiff may not recollect the moments before the simulator fell on him, as of the day of the accident he was aware of sufficient material facts suggesting Altona may have engaged in intentional wrongs that resulted in his injuries and possibly established an exception to the WCA claims bar. He, therefore, had a basis on which to file claims against Altona within the statute of limitations. The motion court correctly found there was no basis for

17

application of the discovery rule and plaintiff's claims against Altona were untimely filed.

In light of our decision, we need not address whether Martin's second-hand description of what transpired on January 15, 2020, if proven, would constitute intentional wrongs sufficient to establish an exception to the WCA claims bar under N.J.S.A. 34:15-8 and Laidlow, 170 N.J. at 623.

2.      June 26, 2023 Order

We find no basis on which to reverse the motion court's grant of summary judgment to the Municipal Defendants on plaintiff's claims he was injured as the result of a dangerous condition at FDFL headquarters. "Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). "[P]ublic entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. The requirements of the TCA are "stringent" and place a "heavy burden" on plaintiffs seeking to establish public entity liability. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993).

Through enactment of N.J.S.A. 59:4-2, a provision of the TCA, the Legislature waived public entity immunity for injuries caused by a dangerous

18

condition of public property in limited circumstances. The statute provides, in relevant part, as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

N.J.S.A. 59:4-1(a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum.

Instead, it must be considered together with the anticipated use of the property . . . . " Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

N.J.S.A. 59:4-3 establishes when a public entity will be deemed to have actual or constructive notice of a dangerous condition of its property:

> a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

Finally, to establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence." Coyne v. State Dep't of Transp., 182 N.J. 481, 493 (2005). Palpably unreasonable implies behavior by a public entity "'that is patently unacceptable under any circumstance' and that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). An analysis of whether a public entity's behavior is palpably unreasonable involves "not only

20

what was done" but also the entity's "motivating concerns."  Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001).  "Simply put, the greater the risk of danger known by the [public entity] and sought to be remedied, the greater the need for urgency."  Ibid.

Although whether a public entity acted in a palpably unreasonable manner is often decided by a jury, the court may decide the question in appropriate cases. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002). "[L]ike any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence."  Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010) (citing Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 451-52 (App. Div. 1993)).

Plaintiff does not argue the FDFL property was inherently dangerous.  He instead argues the Municipal Defendants created a dangerous condition at the property by not submitting the simulator contract for public bidding and professional review in violation of N.J.S.A. 40A:11-4.3.  Plaintiff does not explain how the Municipal Defendants' alleged violation of the statute created a dangerous condition at the property or was the proximate cause of his injuries. Apparently, plaintiff speculates that if the contract had been publicly bid, Altona

would not have been awarded the contract and he would not have been involved in installing the simulator.

Plaintiff's argument fails because the public bidding requirement in N.J.S.A. 40A:11-4.3 applies only when the cost or price of a contract in the aggregate exceeds $17,500. N.J.S.A. 40A:11-3(a)(1). Plaintiff cannot, therefore, establish the Municipal Defendants violated N.J.S.A. 40A:11-4.3 when its official signed the Altona purchase order and by doing so created a dangerous condition at the FDFL property.

The record supports the motion court's conclusion that if a dangerous condition existed at the FDFL property on January 15, 2020, it was caused by the negligence of plaintiff and the other two Altona employees. The dangerous condition that resulted in plaintiff's injuries was the premature removal of a lift from the inadequately secured simulator while it was atop the shipping container. The only parties involved in the failed installation of the simulator were plaintiff and his Altona coworkers. No official, employee, or volunteer of the Municipal Defendants was present when the dangerous condition was created and could not, therefore, have been aware of its existence or acted in a palpably unreasonable manner in not remediating that condition.

22

B.    August 10, 2023 Order Denying Reconsideration.

Rule 4:49-2 provides:

> Except as otherwise provided by [Rule] 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the

23                                                              A-3831-22

actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. . . . [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

The record supports the court's conclusion plaintiff raised a new argument in his reconsideration motion. The court, therefore, did not abuse its discretion when it declined to entertain plaintiff's argument regarding public bidding. However, because plaintiff's public bidding argument was interwoven with his claim the Municipal Defendants were not immune from damages resulting from a dangerous condition, we addressed the argument above. There is no basis on which to reverse the August 10, 2023 order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3831-22