ALMA McGLONE, PLAINTIFF-RESPONDENT, v. MICHAEL A. L. CORBI AND JOHN C. VERMEREN, DEFENDANTS AND THIRD-PARTY PLAINTIFFS-APPELLANTS, v. FORD MOTOR COMPANY, THIRD-PARTY DEFENDANT-CROSS APPELLANT.

ALMA McGLONE, PLAINTIFF-RESPONDENT, v. JOHN C. VERMEREN, DEFENDANT-APPELLANT, AND FORD MOTOR COMPANY, DEFENDANT-CROSS-APPELLANT.

MARGARET CORBI AND MICHAEL CORBI, HER HUSBAND, PLAINTIFFS-RESPONDENTS, v. JOHN C. VERMEREN, DEFENDANT-APPELLANT.

TILLIE TOLL, BENJAMIN ZEGEN, DOROTHY ZEGEN AND BENJAMIN ZEGEN, HER HUSBAND AND IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. JOHN C. VERMEREN AND MICHAEL CORBI, JOINTLY, *ETC.*, DEFENDANTS-APPELLANTS.

Argued May 24, 1971—Decided July 12, 1971.

88

*Mr. Charles H. Nugent* argued the cause for plaintiffs-respondents Margaret Corbi, Tillie Toll, Benjamin Zegen and Dorothy Zegen (*Mr. Anthony F. Marino,* attorney).

*Mr. Michael Patrick King* argued the cause for defendant and third-party plaintiff-appellant John C. Vermeren (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys).

*Mr. Michael J. Piarulli* argued the cause for defendant, third-party defendant, cross-appellant Fort Motor Co. (*Messrs. Piarulli and Vittori,* attorneys).

The opinion of the Court was delivered by

FRANCIS, J. The several actions in this case arise out of a three car collision which occurred on Sunday evening, July 18, 1965 at about 9:30 P.M. in Gloucester City,. Camden County, New Jersey.

Prior to the mishap, all three automobiles had been traveling in a northerly direction on the North-South Freeway. The traffic was very heavy; it was described as having been start-and-stop for some distance. The road surface was wet from rain which had ended a short time earlier.

Miss Alma McGlone, driving a new Volkswagon north on the Freeway, said that the line of traffic in front of her stopped. She followed suit and as the cars began to move again, she put her Volkswagon in first gear and was just starting to move when her car was struck heavily from the rear. She was injured and her automobile was damaged. Michael Corbi was operating the car which struck Miss McGlone's vehicle in the rear. His wife, Margaret Corbi, Dorothy Zegen and her husband Benjamin Zegen, and Tillie Toll were passengers riding with him. According to him, the line of traffic, including his car, had stopped and before he moved again, his car was struck in the rear by a heavy blow which

pushed him into the McGlone car, damaging her vehicle and injuring his passengers. Dr. John C. Vermeren was the operator of the third automobile, a 1965 Lincoln sedan. He was driving from Cape May to a Philadelphia airport. He testified that he was moving at about 25 to 30 miles per hour as he reached a knoll or ridge in the highway. Ahead of him, about 450 feet away, he saw the line of traffic moving but with decreasing speed. He took his foot off the accelerator and started to coast down the slight incline. When halfway down to the base of the incline, he noticed that the cars preceding him had stopped. Up to this point he had experienced no trouble with the brakes on the Lincoln, although he had driven it about 19,000 miles. He expected no difficulty about stopping in time, and when about 30-40 feet from the stopped Corbi car he applied his brakes; "to * * * [his] amazement" nothing happened although he pushed the brake pedal all the way to the floor. The result was the front of his Lincoln hit the rear of the Corbi car. Dr. Vermeren did not try to use the emergency brake, saying that in the short time available he was making a frantic effort to get his regular brake to work, but there was no response to his pumping. The doctor's vehicle was damaged but apparently neither he nor his passengers were injured.

A multiplicity of suits and countersuits arose out of the accident:

1. *January 5, 1966.* Alma McGlone sued Dr. Vermeren and Michael Corbi in Superior Court, Law Division, on account of her personal injuries and consequent losses.

2. *February 11, 1966.* Corbi cross-claimed against Vermeren for contribution if McGlone recovered against him.

3. *March 16, 1966.* Vermeren cross-claimed for contribution against Corbi in the McGlone suit.

4. *May 18, 1966.* Vermeren filed a third-party complaint against Ford Motor Company seeking indemnification or contribution if McGlone recovered against him and also demanding recovery against Ford Motor Company for the damage to his Lincoln automobile.

5. *November 25, 1966.* Ford Motor Company counter-claimed against Corbi and Vermeren for contribution or indemnification in the McGlone suit.

6. *December 16, 1966.* McGlone amended her complaint to include Ford Motor Company as a defendant in the original action.

7. *February 24, 1967.* Alma McGlone sued Vermeren and Ford Motor Company in the district court for the property damage to her car. Ford and Vermeren again cross-claimed against each other for indemnification or contribution. This suit was later transferred to Superior Court, Law Division and consolidated for trial with the other pending actions.

8. *June 29, 1967.* Twenty days before the statute of limitations expired, Margaret Corbi and Michael Corbi, as her husband, sued Vermeren on account of her injuries and expenses. Michael Corbi's *per quod* claim was later withdrawn; he also sued Vermeren separately on account of his own injuries and losses.

9. *June 29, 1967.* Twenty days before the statute of limitations expired, Tillie Toll, Benjamin Zegen and Dorothy Zegen sued Vermeren and Corbi on account of their injuries and losses.

10. *September 27, 1967.* More than two months after the statute of limitations had run on a products liability claim by plaintiffs against Ford, by consent of the plaintiffs Vermeren filed a third-party complaint against Ford Motor Company seeking indemnification or contribution against Ford if the Corbis and Zegens recovered against him.

11. *September 21, 1967.* Order filed consolidating all pending cases for trial.

Trial of the cases began in the Law Division on May 22, 1968. Prior to the drawing of the jury, the plaintiffs Michael and Margaret Corbi, whose suits were against Vermeren, and Benjamin and Dorothy Zegen and Tillie Toll, whose suits were against Vermeren and Corbi, moved to amend their complaints to make Ford Motor Company a party defendant

and to assert a new and separate cause of action against it. This was more than two years and 10 months after July 18, 1965, the date of the accident. The motion was opposed on the ground that the applicable two-year statute of limitations had run. *N. J. S. A.* 2A:14–2. The trial judge declined to allow the amendment for two reasons: (1) the claims were barred by the statute; and (2) even if they were not barred, since almost three years had passed since the accident, it would be an unjust exercise of discretion to allow such new claims to be introduced on the day of trial.

The trial then proceeded and resulted in jury verdicts in favor of Alma McGlone against Ford Motor Company for her personal injuries and property damage, and in favor of Vermeren against Ford Motor Company for his property damage. Verdicts of no cause of action were returned on the McGlone, Corbi, Zegen and Toll claims against Vermeren. (The claims of the Zegens and Tillie Toll against Michael Corbi had been voluntarily dismissed earlier.) On appeal the Appellate Division in an unreported *per curiam* opinion reversed the trial court's denial of leave to the plaintiffs Corbis, Toll and Zegens to amend their complaints to bring in Ford as a defendant, and the case was remanded to permit the amendment and a trial against Ford. In addition it reversed the jury verdicts in favor of Vermeren and against all the plaintiffs, finding error in the trial court's refusal to grant plaintiffs' request to charge the text of *N. J. S. A.* 39:3–67 of the Motor Vehicle Act respecting the braking equipment required on motor vehicles. For that error a new trial was ordered for all plaintiffs against Vermeren. On Ford's cross-appeal from the money judgment against it, the Appellate Division held there was adequate evidence upon which to submit the issue of negligence and strict liability in tort against Ford as the manufacturer of the Vermeren automobile. Moreover, it saw no error in the trial court's charge to the jury on this aspect of the case. This Court granted certification on the petitions of Vermeren and Ford. 57 *N. J.* 435 (1971). We now reverse and reinstate the judgments entered

in the trial court. We agree, however, with the Appellate Division holding that the trial court properly sent the cases of McGlone and Vermeren to the jury against the Ford Motor Company on the issues of negligence and strict liability, and that no error was committed in the charge respecting those issues.

I

In our judgment, the trial judge was correct in holding that the proposed amended complaint of the plaintiffs Corbis, Toll and Zegens to add a cause of action against Ford Motor Company was barred by the two-year statute of limitations, *N. J. S. A.* 2A:14–2. We agree also with the contention that even if the statute, for some reason which we do not find present in the case, did not constitute an absolute bar to the amendment, the trial judge's refusal to permit the amendment should not be deemed an abuse of discretion.

The limitation period for the institution of suit by the plaintiffs Corbis, Zegens and Toll on alleged personal injury claims against Ford Motor Company expired on July 18, 1967. The plaintiffs Corbis sued Vermeren alone on June 29, 1967, 20 days before their injury claims against him would have been barred. On the same day, plaintiffs Toll and Zegens sued Vermeren and Michael Corbi, the driver of the car in which they were riding at the time of the accident, to recover on their injury claims.

■ Twenty days later, by virtue of the statute of limitations, in ordinary circumstances the Ford Motor Company acquired a vested right to be forever free of any injury claims by the Borbis, Zegens and Tillie Toll. *Union City Housing Authority v. Commonwealth Trust Co.,* 25 *N. J.* 330, 335 (1957).

■ On September 27, 1967 defendant Vermeren *with the consent of the plaintiffs* filed a third-party complaint against Ford, the theory of the claim being that if he, Vermeren, were held liable to plaintiffs he would be entitled to contribution or indemnification from Ford because of Ford's

tortious conduct in selling a defective automobile. It is important to note that the filing of this complaint took place over two months after the statute of limitations expired on the injury claims of the plaintiffs against Ford. The statute, however, did not bar Vermeren's action over for contribution or indemnification against Ford. That claim would not arise unless and until the plaintiffs recovered a judgment against Vermeren in their pending suit against him, and would not be affected by the two-year limitation on the prosecution of plaintiffs' personal injury claims. See Annotation, "Change in party after statute of limitations has run," 8 *A. L. R.* 2d 6, 112, 139–144 (1949) ; Annotation, "Running of a statute of limitations against claim for contribution or indemnity based on tort," 20 *A. L. R.* 2d 925 (1951).

When the motion of plaintiffs Zegens, Corbis and Tillie Toll was filed on May 21, 1968, almost three years after the accident, to add a new cause of action against Ford and to make it a defendant in their cases, on the face of the record their injury claims were barred by the two-year limitation. But the Appellate Division, citing *Lawlor v. Cloverleaf Memorial Park, Inc.,* 56 *N. J.* 326 (1970), said that since Vermeren, by the third-party complaint filed May 18, 1966, had brought Ford into the earlier *McGlone* separate action for injuries and damages, and since thereafter McGlone amended her complaint to make Ford a party defendant, alleging its negligence and "breach of warranties," Ford had been placed on notice of the "potential liability" for any injury claims of the Corbis, Zegens or Tillie Toll. The opinion also declared that after May 18, 1966, Ford "could not lie in repose" but was called upon to prepare to defend against the injuries suffered by the Corbis, Zegens and Tillie Toll as possible future plaintiffs. If that were so, much of the efficacy of the statute of limitations as a statute of repose would be lost. It would mean that whenever there was a multiple car accident involving a number of drivers and passengers, and one person sued the driver and the manufacturing of the automobile on an injury claim arising

therefrom and alleged that the mishap was caused by negligent driving and a defectively manufactured car, the manufacturer would be open to independent suit by any of the other injured persons for years thereafter regardless of the statute of limitations.

*Lawlor v. Cloverleaf Memorial Park, Inc., supra,* does not support the Appellate Division view that the untimely amendment to the complaint to add a new party and a new cause of action should have been allowed. In that case it appeared that on September 6, 1964 Mrs. Lawlor fell on cemetery property and brought suit against Cloverleaf Memorial Park, Inc. about five months later. Within the two-year period the defendant filed a third-party complaint against Dr. Lepree and the Rahway Hospital alleging that they had negligently attended Mrs. Lawlor causing further injury and the contraction of a disease. On December 23, 1966 she died allegedly as the result of the injuries and malpractice. On January 26, 1968, her executor was substituted as plaintiff and the complaint was amended so as to include a direct cause of action against the doctor and the hospital, the allegations being the same as those made earlier by Cloverleaf in its third-party complaint. On motion, the trial judge dismissed the count of the amended complaint under the Survival Act as being barred by the two-year statute of limitations. It was his view that the survival action introduced a new and separate cause of action. This Court reversed. It pointed out that the original complaint and the third-party complaint were filed *well within the limitation period;* further that the amended complaint was for the same survival cause of action as that pleaded in the third-party complaint against defendants who were already in the case within the required time limitation, and who therefore had ample time to prepare to meet it. Consequently, we held that under the broad provisions of our rules of practice the amended complaint related back to the date of filing of the third-party complaint. The opinion cited *R.* 4:9–1, dealing with amendments of complaints, and *R.*

4:9–3, dealing with the relation back of such amendments. Since the third-party complaint was filed within the statutory period, the amended complaint was deemed to speak as of that date.

In the case now before us, Vermeren's third-party complaint against Ford was filed after the statute of limitations had run on the Corbi, Zegen and Toll personal injury claims against it. Ford could not object to that complaint because the causes of action pleaded therein being for contribution or indemnification were not subject to the two-year bar. Thus, if the amendment relation-back doctrine is applied and the timeliness of plaintiffs' new cause of action against Ford for their injuries is tested by the filing date of Vermeren's third-party complaint, the plaintiffs are not helped because more than two years had passed as of that time.

█ Aside from the application of the statute of limitations as a matter of law against the plaintiffs, we see no just reason for interfering with the exercise of the trial court's discretion in denying the motion to amend the complaint. The causes of action of the Corbis, Zegens and Tillie Toll against the Ford Motor Company came into existence on July 18, 1965, the day of the accident, and the statute of limitations began to run against them on that date. They did not sue Ford at any time within the two-year period, and they failed to join Ford as a defendant in their original suit against Vermeren which was instituted on June 29, 1967, about three weeks before the statute expired on their claims against Ford. So when July 18, 1967 passed, Ford was fully justified in law and in fact in concluding that the Corbi, Toll and Zegen claims were barred and no longer capable of being activated by them. And, in any event, even if there were some basis (which we do not find) on which plaintiffs could have included Ford as a defendant by amendment, they did not even attempt to do so until the day of trial, almost a year after their suit against Vermeren had been instituted. Under the circumstances we see no just basis for overruling the trial court's determination.

## II

The Appellate Division concluded that the trial court should have charged *N. J. S. A.* 39:3–67 of the Motor Vehicle Act as requested by the plaintiffs in their case against Vermeren. The request was

1. Every motor vehicle shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including 2 separate means of applying the brakes. If these 2 separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the vehicle without brakes adequate to stop and to hold such vehicle. One of these means of applying the brakes shall be so constructed that it can be set to hold the vehicle, or any combination of which it forms a part, stationary on any up or down grade upon which it is operated, whether the vehicle or combination is empty or loaded.

This excerpt from the statute constitutes the full request to charge. Plaintiffs did not add thereto any statement as to the bearing they claimed the statute had on the issue to be determined by the jury; nor any request to instruct the jury as to the significance it had or could have on the basic or ultimate question to be decided by the jury, *i. e.,* Vermeren's negligence; nor did the request seek a statement of the principle that a violation of the Traffic Act, if found to have existed, was not negligence *per se,* but rather some evidence of negligence to be considered by the jury. *LeBavin v. Suburban Gas Co.,* 134 *N. J. L.* 10 (E. & A. 1946); *Moich v. Passaic Terminal & Transportation Co., Inc.,* 82 *N. J. Super.* 353 (App. Div. 1964).

In explaining the reason for declining to instruct the jury as requested, the trial judge said

* * * I do not think it [the section of the statute] is applicable to this case for several reasons. One, there is no proof that the car was not equipped with a dual braking system or two separate means of applying the brakes. There is no proof that he did not have a stop brake or emergency brake and a foot brake. Number two, the thrust of your defense [?] was that the brakes were operating properly

when they were examined subsequent to the accident. Now, in this case, then, the case * * * totally is barren of any proof that it did not have a dual braking system. The defense of Vermeren is that without previous warning the brakes suddenly failed to operate. There was a complete brake failure of the braking system. There is no proof that he had any previous knowledge of this condition. In the absence of such proof I don't think the statute comes into play. I agree that ordinarily that violation of the Traffic Act may be charged to the jury and may be considered by them as evidence of negligence, although it is not conclusive, but that situation always implies that the defendant knew of the condition * * * which he is charged to have violated.

It thus appears that the trial court was fully aware of the legal implications of a request to charge a provision of the Traffic Act and the duty to do so if there is proof of the violation in the case, and if such violation appears to be relevant on the issue of negligence.

We agree that the evidence did not show that Vermeren's car was not equipped with the braking devices specified in the statute. Obviously the principal thrust of the cited section is directed toward equipment requirements; its headnote is "Brake equipment required." And the final sentence of the section is: "No person shall drive, move, park or be in custody of on any highway any motor vehicle not *equipped* as herein required." (Emphasis added.) It may be noted also that the next section, *N. J. S. A.* 39:3–68, is entitled "Brake performance" and contains a regulation of the stopping capacity of the brakes.

The proof indicated that just before Vermeren applied his foot brake he was 30 to 40 feet from the Corbi car and traveling no more than 25 – 30 miles per hour. Relying on his previous experience driving and the fact that he had never before had any difficulty with the brake, he indicated his confidence that there would be no problem about stopping in time. When the brake did not function, and he was faced with the pressing emergency, he did not try to apply the emergency brake; he "was too busy" trying to get the foot brake to respond, and "by the time * * * [he] could think of anything else, the blow had been struck."

The expert proof in the case was to the effect that, assuming the brake failure described by Vermeren to be the fact, it must have been caused by the vaporization of the brake fluid due to heat generated by heavy use of the brakes. The dispute among the experts was whether the vaporization could have been caused by intermittent pumping of the brakes in heavy traffic or by the operator continuously driving with his foot on the brake pedal. They seemed to be in agreement, however, that if vaporization did occur, upon cessation of either unusually heavy use of the brake or a continuous riding of the pedal, the return of the brake fluid to a liquid state would occur quickly. This fact was borne out by the evidence that when the police examined Vermeren's foot brake shortly after the accident, it responded normally, and that additional expert tests revealed that it was functioning properly. Moreover, Vermeren continued to drive the car thereafter, adding 41,000 more miles without a repetition of the failure. (We need not on this appeal discuss the ample expert and other proof indicating that the condition and functioning of the brake constituted a manufacturing defect. That proof clearly supported the jury finding in the McGlone and Vermeren cases against the Ford Motor Company.)

 The law should not require a trial judge to advise the jury about a provision of the Motor Vehicle Act unless it has clear relevancy to the issue to be determined. *Mattero v. Silverman,* 71 *N. J. Super.* 1 (App. Div. 1961), *certif. den.* 36 *N. J.* 305 (1962). An owner (the request to charge here was directed only against Vermeren) of an automobile should not be charged with responsibility for a manufacturing defect in a breaking system unless he had knowledge of it. See *Currie v. United States,* 312 *F. 2d* 1 (4 Cir. 1963) ; *Dayton v. Palmer,* 1 *Ariz. App.* 184, 400 *P.* 2d 855 (1965) ; *McConnell v. Herron,* 240 *Or.* 486, 402 *P.* 2d 726 (1965) ; and *cf. Alpert v. Feldstein,* 21 *N. J. Super.* 503 (App. Div. 1952). Obviously a sudden and unexpected brake failure arising from a manufacturing defect does not impose absolute liability on the driver. See *Schaeffer v. Caldwell,* 273 *App. Div.* 263, 78

*N. Y. S.* 2d 652 (1948); and *cf. Osbun v. DeYoung,* 99 *N. J. L.* 204 (E. & A. 1923).

■ The trial judge here, after detailing the evidence as to the manner of Vermeren's operation, his testimony in explanation of the brake failure, the circumstances attending the failure, and the experts' testimony concerning the car's brake mechanism and the manner of its function, instructed the jury fully on the issues of Vermeren's negligence and proximate cause. Under the circumstances, we see no prejudicial error on his part in declining to charge against Vermeren the braking equipment requirement of *N. J. S. A.* 39 :3–67.

Other claims of trial error raised by the parties having been properly disposed of in the Appellate Division, no further discussion of them is required.

For the reasons expressed the judgment of the Appellate Division is reversed and the cause is remanded for reinstatement of the trial court judgments.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and MOUNTAIN—6.

*For affirmance*—None.