292 N.J. Super. 62 (1996)
678 A.2d 293
HARLEY DAVIDSON MOTOR COMPANY, INC., PLAINTIFF-APPELLANT,
v.
ADVANCE DIE CASTING, INC., DEFENDANT-RESPONDENT, AND NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1996.
Decided June 28, 1996.
*65 Before Judges DREIER, A.M. STEIN and CUFF.
John I. Lisowski argued the cause for appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Lisowski, of counsel, Robert G. Klinck and Steven F. Gooby, on the brief).
William R. Bumgardner argued the cause for respondent (Bumgardner, Hardin & Ellis, attorneys; Mr. Bumgardner, of counsel, Leona C. McFadden, on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Harley Davidson Motor Company appeals from the dismissal of its indemnification suit against defendants Advance Die Casting, a component parts manufacturer, and its insurer, Northbrook Property and Casualty Insurance Company (Northbrook). The court's dismissal was based upon plaintiff's alleged failure to comply with the entire controversy doctrine. We reverse.
In an underlying action,[1] an injured motorist brought suit against Harley Davidson for defective design or manufacture of a motorcycle or its component parts. In March 1993, as the suit neared trial, Harley Davidson sent a letter to Advance Die Casting notifying it that Harley Davidson intended to produce expert testimony that the motorcycle clutch chain cover manufactured by Advance Die Casting was defective and was the cause of the *66 motorist's injuries. The letter also included a demand that Advance Die Casting defend and indemnify Harley Davidson in the underlying litigation. Advance Die Casting referred the letter to Northbrook, which refused Harley Davidson's demand, indicating that Northbrook, on behalf of Advance Die Casting, "is currently, not in a position to assume the defense or indemnify Harely [sic] Davidson, Inc." Harley Davidson sent another request to Northbrook on July 14, 1993, five days before trial, advising Northbrook of the trial date and location, expenses incurred to date, and Harley Davidson's intent to seek indemnification and judgment for all expenses as against Northbrook on behalf of Advance Die Casting. Approximately one week later, Harley Davidson sent another letter to Northbrook, advising it that Harley Davidson was willing to contribute towards settlement of the dispute, however, since Northbrook, on behalf of Advance Die Casting, had expressed an unwillingness to make any contribution, Harley Davidson would seek indemnification and recovery of all defense costs from Northbrook.
The case was tried in July and August 1993, and the jury found the motorcycle's clutch chain cover was defectively manufactured but determined that the defect was not the proximate cause of the motorist's injuries. In October 1994, we reversed and remanded the case for a new trial on the issue of proximate cause and damages. The Supreme Court later denied certification.
On November 20, 1994, Harley Davidson sent Northbrook another letter, advising of the nature of the jury verdict and the Appellate Division decision, the intention to file a petition for certification, and a continuing request for indemnification and defense costs. By letter dated January 4, 1995, Northbrook responded to Harley Davidson's earlier letters and stated in part that Northbrook would not assume the defense or indemnification of Harley Davidson because Northbrook (and Advance Die Casting) were never directly brought into the suit, Harley Davidson accepted and altered the clutch cover, the cover was not the cause *67 of the accident, and the year the cover in question was made was undetermined.
On March 10, 1995, a month before the underlying action was to be retried, Harley Davidson filed this separate suit against Advance Die Casting and Northbrook for common law indemnification. By letter dated April 28 Harley Davidson informed counsel for Advance Die Casting of the retrial date of the underlying litigation, but then on May 1, 1995, advised Advance Die Casting of a proposed settlement between Harley Davidson and the injured motorist. Counsel for Northbrook, on behalf of Advance Die Casting, appeared in court and agreed to the fairness and reasonableness of the settlement amount. A stipulation of dismissal with prejudice was entered in the underlying action on June 2, 1995. At no time did anyone attempt to consolidate the two matters.
Advance Die Casting made a motion to dismiss in which it raised only the in personam jurisdiction issue. Harley Davidson made a cross-motion for summary judgment responding to defendant's arguments. While noting the entire controversy issue, plaintiff argued for its inapplicability. The court, however, did not reach the jurisdictional issue because it sua sponte granted summary judgment in favor of Advance Die Casting and Northbrook on the basis of the entire controversy doctrine and dismissed Harley Davidson's complaint.

I. Entire Controversy Doctrine
The entire controversy doctrine is inapplicable in the present case because Harley Davidson's indemnification claim against Advance Die Casting and Northbrook technically did not accrue until Harley Davidson's settlement with the personal injury plaintiff. Pursuant to the entire controversy doctrine, all parties with a material interest in the litigation and all claims arising from related facts must be joined in a single action. DiTrolio v. Antiles, 142 N.J. 253, 267-68, 662 A.2d 494 (1995); Cogdell v. Hospital Center, 116 N.J. 7, 26, 560 A.2d 1169 (1989). By requiring joinder of such parties and claims, the doctrine aims to *68 avoid waste, delay, piecemeal litigation, and unfairness to the interested parties through effectuating complete and final dispositions. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322, 662 A.2d 523 (1995); DiTrolio v. Antiles, 142 N.J. at 267, 662 A.2d 494; Cogdell v. Hospital Ctr., 116 N.J. at 15, 560 A.2d 1169. The Supreme Court has stated, however, that the doctrine does not apply to claims that have not yet accrued at the time of or during the original action. Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 294, 662 A.2d 509 (1995); Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. at 323, 662 A.2d 523; DiTrolio v. Antiles, 142 N.J. at 273-74, 662 A.2d 494; Pressler, Current N.J. Court Rules, comment 2 on R. 4:30A (1996).
It is well settled in New Jersey that a cause of action for indemnification accrues when an indemnitee becomes responsible to pay on a claim. Holloway v. State, 125 N.J. 386, 399, 593 A.2d 716 (1991); McGlone v. Corbi, 59 N.J. 86, 95, 279 A.2d 812 (1971); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 81, 159 A.2d 97 (1960); Cola v. Packer, 156 N.J. Super. 77, 81 n. 2, 383 A.2d 460 (App.Div. 1977); New Jersey Transit Rail Operations, Inc. v. North Jersey Cleaning Servs., Inc., 277 N.J. Super. 367, 371, 649 A.2d 908 (Law Div. 1994). Because Harley Davidson became obligated to pay the injured motorist only after the settlement of the case, the indemnification claim did not accrue until that time, and thus the claim falls outside the scope of the entire controversy doctrine.
A more stringent interpretation of the entire controversy doctrine would ignore, or make mandatory, both the permissive joinder rule, R. 4:29-1(a), and the impleader (third-party practice) rule, R. 4:8-1(a). It would have a similar effect upon substantive provisions of the Joint Tortfeasor Contribution Act, N.J.S.A. 2A:53A, and even provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:9-3 and 3-1. Where the claim against a third-party defendant is for a sequential claim such as indemnification, R. 4:8-1 is, and must remain, permissive, not mandatory, except as R. *69 4:28-1(a) (mandatory joinder) may apply. Although Pressler, Current N.J. Court Rules, comment to R. 4:28-1(a) (1996), states that this rule is open-ended in its definition of what parties must be joined, there is no blanket rule placing indemnitors in such a mandatory class.
Our less rigid interpretation of the entire controversy doctrine as it relates to indemnification claims is also supported by a reading of N.J.R.E. 803(c)(26) [formerly Evid. R. 63(21)]. Provided that an indemnitor had notice of and an opportunity to defend the first action, N.J.R.E. 803(c)(26) permits an indemnitee to bind an indemnitor in a second action with the judgment obtained in the first action. N.J.S.A. 12A:2-607(5)(a), a Uniform Commercial Code provision, permits a buyer to vouch in its seller when a third party sues the buyer for a defect in the product and allows the buyer to bind the seller with determinations of fact where the seller refuses to defend the buyer. This rule and statute thus envision the possibility of separate later actions for indemnification claims, even if the indemnitor was not technically joined as a party in the first action. Without such rules, an indemnitee could be subject to inconsistent verdicts if it could not obtain jurisdiction over an out-of-state indemnitor over whom it could not effect service. This is also true as to in-state indemnitors which an indemnitee chooses not to join in reliance upon our substantive rule that the claim for indemnity does not ripen until the indemnitee becomes liable.
Consequently, since even the recent expansive interpretations of the entire controversy doctrine do not purport to overrule the rules of evidence or the U.C.C., we assume that a subsequent separate suit for indemnification is not barred by the entire controversy doctrine, at least where an indemnitor had been vouched in with notice and an opportunity to defend the underlying action. Even though the wiser course might have been for Harley Davidson to have joined Advance Die Casting as a third-party defendant in the underlying litigation, the purposes of the entire controversy doctrine can be satisfied by use of the "vouching *70 in" procedure provided for in N.J.R.E. 803(c)(26). See also N.J.S.A. 12A:2-607(5)(a).

II. Indemnification Claim
There are, however, two factual issues remaining in this case. First, Harley Davidson may have somewhat belatedly apprised defendants of the progress of the case and of its intent to seek indemnification and defense costs. Second, the issue of whether the clutch chain assembly cover was defendant's product has not been factually determined, although it can still be resolved. Both these issues should be determined by the trial court on remand.
According to plaintiff, Advance Die Casting had an adequate opportunity to defend itself in the underlying litigation. It chose not to do so and decided instead to wait for the outcome of that litigation, perhaps not wanting to be joined directly as a defendant by the plaintiff motorist. See R. 4:8-1(b). Harley Davidson notified defendants of its demand for defense and indemnification five months before the personal injury trial and three times thereafter. Counsel for Northbrook received advance notice of Harley Davidson's intended settlement with the injured motorist and in fact appeared in court and agreed to the fairness and reasonableness of the amount of the settlement. Plaintiff contends, therefore, that any prejudice Advance Die Casting and Northbrook will suffer as a result of Advance Die Casting's not having been joined in the personal injury litigation could be said to be of their own making. Furthermore, the earlier action resulted in a jury decision after extensive proofs that the cover was defective, and Advance Die Casting has not shown how an earlier notice would have changed that decision.
Advance Die Casting contends to the contrary. It agrees that pursuant to N.J.R.E. 803(c)(26), if an indemnitee had notice of and an opportunity to defend a first action, the judgment in the first action is conclusive evidence of the indemnitee's liability, of the factual findings on which the judgment is based, and of the reasonableness of the damages. But "notice should be given so shortly after the institution of suit as to permit a complete control *71 of pretrial proceeding by the indemnitor." United States Wire & Cable Corp. v. Ascher Corp., 34 N.J. 121, 126, 167 A.2d 633 (1961). Advance Die Casting alleges that it was given notice only five months prior to trial, and that this was insufficient time to participate meaningfully in the defense.
This dispute raises a factual question to be resolved on remand in light of the parties' arguments regarding the sufficiency of the five-month advance notice.
A second factual issue remains, even if the five-month period was sufficient. "[T]he judgment offered under [N.J.R.E. 803(c)(26)] is not admissible as proof of the indemnity obligation." Biunno, New Jersey Rules of Evidence, comment on N.J.R.E. 803(c)(26) (1995). This must be proven separately. The trial court never considered Harley Davidson's arguments for summary judgment because the court ruled that Harley Davidson's indemnification claim was barred by the entire controversy doctrine. Summary judgment was inappropriate at that stage because, although the jury determined that the clutch cover was defectively manufactured, whether Advance Die Casting manufactured the particular clutch cover involved in the personal injury action was an unresolved factual issue. The definitive jury finding of defective manufacture of the clutch cover binds defendant only if the cover was its product.
According to an affidavit of Advance Die Casting's vice-president and to Advance Die Casting's brief, Advance Die Casting has not inspected the clutch cover at issue and therefore cannot determine whether or not it was the manufacturer of the part. An engineer from Harley Davidson certified that comparison of the clutch cover's identification number with a Harley Davidson parts history file revealed that Advance Die Casting manufactured the part.[2] Neither party has provided evidence concerning whether *72 Advance Die Casting was Harley Davidson's sole manufacturer and supplier of these types of clutch covers, although Harley Davidson has asserted that Advance Die Casting was the sole manufacturer of the part bearing the particular identification number. On remand, the court should resolve the factual issue of product indemnification.
On remand, the only issues before the court will involve indemnification since there is no basis to find plaintiff entitled to only a contribution claim. The jury found in the underlying action that the clutch cover was "defectively manufactured," not defectively "designed." Therefore, since Harley Davidson was not an active tortfeasor, indemnification, not contribution, principles will apply. See Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 511, 562 A.2d 202 (1989), and cases there cited (regarding when one tortfeasor may obtain indemnity or only contribution from another tortfeasor).

III. In Personam Jurisdiction
Defendant's challenge to New Jersey's personal jurisdiction is also relevant because of the open factual issues. Rather than remand for a decision, we can resolve the issue, as it has been fully briefed. R. 2:10-5. Pursuant to New Jersey's long-arm rule, New Jersey courts can exercise personal jurisdiction over nonresident defendants to the extent consistent with due process of law. R. 4:4-4(b)(1). Due process requires that the defendant corporation have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); see McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 225-26 (1957); *73 Kulko v. Superior Court, 436 U.S. 84, 85, 98 S.Ct. 1690, 1693, 56 L.Ed.2d 132, 141 (1978). The New Jersey Supreme Court has characterized this due process test as a two-step inquiry: focusing first on a minimum contacts analysis and next on a fair play and substantial justice examination. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989).
Regarding the minimum contacts analysis, the court must look to "the relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. at 323, 558 A.2d 1252 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683, 698 (1977)). The inquiry focuses on defendant's purposeful activity directed toward the forum state, not on the unilateral activity of plaintiff or some unrelated third party. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958); Lebel v. Everglades Marina, Inc., 115 N.J. at 323-24, 558 A.2d 1252. Defendant's contacts with the forum state therefore must be such that defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501; Lebel v. Everglades Marina, Inc., 115 N.J. at 324, 558 A.2d 1252.
The United States Supreme Court in World-Wide Volkswagen Corp. v. Woodson, indicated that the minimum contacts test might be satisfied under a stream-of-commerce theory, i.e., where a defendant manufacturer or major distributor "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502. The New Jersey Supreme Court also adopted this theory in Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 472, 508 A.2d 1127 (1986).
Subsequently, in Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court divided four-four-one on the issue of whether stream-of-commerce contact alone was an adequate basis *74 to justify the exercise of personal jurisdiction over a nonresident defendant. The New Jersey Supreme Court in Lebel v. Everglades Marina, Inc., noted that Asahi rendered the stream-of-commerce theory an area of "unsettled jurisprudence." 115 N.J. at 319-20, 322, 558 A.2d 1252. In Lebel, the Court noted:
In ... Charles Gendler & Co. ... we accepted the stream-of-commerce theory as a valid method of discerning the contours of due process. Rather than embark on a prediction of the future course of this stream of jurisprudence, we shall hew closely to the limited fundamentals about which there is little or no dispute or debate.
[Id. at 320, 558 A.2d 1252.]
The Court therefore went on to employ the traditional minimum contacts analysis.
This court had an opportunity to interpret Lebel in Cruz v. Robinson Engineering, 253 N.J. Super. 66, 72-73, 600 A.2d 1238 (App.Div.), certif. denied, 130 N.J. 9, 611 A.2d 648 (1992). The court proffered:
As we read Lebel, it does not reject either Volkswagen or Charles Gendler. What it says is merely that since the viability of stream of commerce as the exclusive jurisdictional justification has been "unsettled" by Asahi, that jurisdictional theory ought not constitute the ratio decidendi if jurisdiction can be sustained on traditional minimum contacts analysis.
[Id. at 72, 600 A.2d 1238.]
We then held the California manufacturer subject to personal jurisdiction in New Jersey where the injured factory worker brought suit in New Jersey alleging a product defect. Id. at 74, 600 A.2d 1238.
In the present case, Advance Die Casting, a Wisconsin corporation, manufactured and supplied clutch covers for Harley Davidson in accordance with a contract entered into in Wisconsin in 1977. Advance Die Casting then shipped the covers to either Harley Davidson's Wisconsin or Pennsylvania plant, but defendant could not reasonably have assumed the product would remain in those two states. It must have known that Harley Davidson then assembled the clutch covers into its motorcycles and sold the motorcycles throughout the United States, including New Jersey. *75 Harley Davidson asserts in its reply brief that it has fifteen factory-authorized dealerships in New Jersey. Thus, Advance Die Casting should have reasonably anticipated that its products would reach New Jersey and would be sold there as a component part of plaintiff's motorcycle.
According to a certification of Advance Die Casting's vice-president, the corporation has no other connection with New Jersey. None of its assets, employees, offices, telephone numbers, mailboxes, or the like are located in New Jersey and it has never directly sold any component parts or paid any taxes in New Jersey. But plaintiff does not seek general jurisdiction over defendant; plaintiff asserts only the specific jurisdiction that relates to the sale of the product into which defendant's product was incorporated.
Having determined that the facts are clearly sufficient to support Advance Die Casting's minimum contacts with New Jersey, we must also engage in a fair play analysis. Under Lebel v. Everglades Marina, Inc., supra, we must consider (1) the burden on defendant of litigating in a foreign forum; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective and convenient relief; (4) the interstate judicial system's interest in efficiently resolving controversies; and (5) the several states' interest in furthering substantive social policies. 115 N.J. at 328, 558 A.2d 1252. The nonresident defendant that has minimum contacts with the forum state "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Ibid.
The burden of Advance Die Casting litigating in New Jersey is negligible. Any witnesses, records, and blueprints located in Wisconsin can easily be transported to New Jersey. The fact that, according to Advance Die Casting's brief, Wisconsin law governs the contractual relationship between Advance Die Casting and Harley Davidson, weighs against our exercising jurisdiction. However, while New Jersey has only slight interest in adjudicating the claims involving non-residents, this case concludes a *76 matter involving a resident's injuries and thus New Jersey's interest counter-balances Wisconsin's. Additionally, plaintiff has an interest in proceeding in New Jersey, where the personal injury action was tried and the records are available. The resolution of this controversy should not be delayed by the reinstitution of the action elsewhere. It appears that sufficient minimum contacts exist such that New Jersey's exercise of specific jurisdiction over defendant comports with traditional notions of fair play and substantial justice as set forth in due process jurisprudence.
In sum, we determine that (1) plaintiff's claim is not barred by the entire controversy doctrine, (2) the findings made on the underlying suit will be binding on defendant if (a) plaintiff satisfied the threshold requirements of N.J.R.E. 803(c)(26), and (b) the clutch plate cover is shown to be part of an assembly manufactured by defendant, and (3) there is ample basis for in personam jurisdiction over defendant in this case.
The dismissal of plaintiff's complaint is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] Di Maria v. Dennis, Dkt. No. BER-L-6797-90, was filed May 24, 1990 in Bergen County in the Law Division of the Superior Court of New Jersey.
[2] Additionally, during the settlement of the personal injury action, while counsel for Northbrook was present, counsel for Harley Davidson indicated on the record that the injured motorist agreed to give the broken parts, including the clutch cover, to Northbrook's counsel for examination, but we do not know if this offer was accepted. We also do not know whether Northbrook has possession of the clutch cover and Advance Die Casting is separating itself from Northbrook in this respect, or whether neither Northbrook nor Advance Die Casting have received the clutch cover.