692 A.2d 108

CARL V. BUCK, II, PLAINTIFF–APPELLANT, v. JAMES
.A. MACDONALD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 16, 1997—Decided April 29, 1997.

Before Judges SHEBELL, BAIME and PAUL G. LEVY.

*Laura C. Tharney* argued the cause for appellant (*Heine Associates, P.A.*, attorneys; *Ms. Tharney*, of counsel, and on the letter-brief).

*Philip J. Espinosa* argued the cause for respondent (*Pennington & Thompson, P.C.*, attorneys; *Robert D. Thompson* and *Mr. Espinosa*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This is an appeal from the September 15, 1996 order of the Law Division granting defendant's motion for summary judgment based on the determination that plaintiff's action is barred by the entire controversy doctrine. Plaintiff's motion for reconsideration was also denied.

The sole issue on appeal is whether plaintiff's indemnification claim is barred by the entire controversy doctrine in light of plaintiff's failure to file a cross-claim for indemnification against defendant during the previous law suit when they were co-defen-

dants. We have carefully considered plaintiff's legal arguments and find them to be clearly without merit. *R.* 2:11–3(e)(1)(E).

Plaintiff, Carl V. Buck, II, and defendant, James A. MacDonald, each owned shares of a corporation that developed a sixty-unit condominium project in Cape May. On June 2, 1995, plaintiff instituted a claim for indemnification on behalf of the corporation against MacDonald, who had been the project's architect, alleging faults with the design and construction of the structures. In August 1990, Buck, MacDonald, and the corporation had been named co-defendants in a suit by the condominium owners, who sought redress for the design and construction deficiencies. In April 1993, a settlement agreement was reached with the owners under which the corporation, Buck, and MacDonald agreed to pay for the remedial measures necessary to correct the deficiencies found in the project. Because of the earlier suit, handled by plaintiff's prior counsel, the trial judge granted summary judgment against plaintiff in this action, finding that the entire controversy doctrine precluded plaintiff's claim for indemnification.

Pursuant to the entire controversy doctrine, all parties with a material interest in the litigation and all claims arising from the same overall transaction must be joined in a single action. *DiTrolio v. Antiles,* 142 *N.J.* 253, 267–68, 662 *A.*2d 494 (1995); *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 289, 662 *A.*2d 509 (1995); *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 322–23, 662 *A.*2d 523 (1995); *Mortgagelinq Corp. v. Commonwealth Land Title,* 142 *N.J.* 336, 342–43, 662 *A.*2d 536 (1995); *Cogdell v. Hospital Ctr.,* 116 *N.J.* 7, 26, 560 *A.*2d 1169 (1989). "In sum, the entire controversy doctrine compels litigants at the risk of preclusion to assert all claims in a single controversy." *Prevratil v. Mohr,* 145 *N.J.* 180, 190, 678 *A.*2d 243 (1996).

The test for whether claims are "related" such that they must be brought in a single action under New Jersey['s] entire controversy doctrine was expressed in *O'Shea v. Amoco Oil Co.,* 886 *F.*2d 584 (3d. Cir.1989), as follows: if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and

liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation. *Id.* at 590–91.

[*DiTrolio, supra,* 142 *N.J.* at 268, 662 *A.*2d 494.]

We find the holding in *Harley Davidson v. Advance Die.*, 292 *N.J.Super.* 62, 68, 678 *A.*2d 293 (App.Div.), *certif. granted,* 146 *N.J.* 568, 683 *A.*2d 1163 (1996) to be less than compelling here. In that case, the parts manufacturer was not a party to the initial suit and the claim against it purportedly did not accrue until after a settlement had been reached between the motorcycle company and the injured plaintiff. We, therefore, found that a stringent application of the entire controversy doctrine in the context of that case might result in undesirable consequences. *Id.* at 68–69, 678 *A.*2d 293.

■ More to the point here is *Bendar v. Rosen,* 247 *N.J.Super.* 219, 237, 588 *A.*2d 1264 (App.Div.1991), wherein we stated that the entire controversy doctrine and judicial economy militated in favor of requiring the assertion of a cross-claim for contribution in an underlying tort action, even though "technically a right of contribution does not arise until a tortfeasor has paid more than his pro rata share." The comment to *R.* 4:7–5 (Cross–Claim Against Co–Party; Claim for Contribution or Claim for Indemnity) supports our conclusion that the entire controversy doctrine requires an indemnification cross-claim to be made here.

The import of the amendment is to require defendants to assert any cross-claims for contribution and indemnity which they may have against any other party in the action itself despite the fact that the cause of action for contribution and indemnity does not technically accrue until payment of the judgment by that defendant.

[Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 4:7–5 (1997).]

In *Wm. Blanchard Co. v. Beach Concrete Co.,* 150 *N.J.Super.* 277, 287, 375 *A.*2d 675 (App.Div.), *certif. den.,* 75 *N.J.* 528, 384 *A.*2d 507 (1977), a series of cross-claims and counterclaims that co-parties had failed to assert in a factually complex dispute arising from the design and construction of a building were barred by the trial court. The appellate court affirmed stating:

This litigation concerns a single transaction—a transaction whose narrowest scope includes the respective performance by each of the present litigants of their

respective contractual undertakings *vis-a-vis* this building project and whose rights and liabilities *inter sese* are finally determinable without joinder of additional parties. The purpose of the litigation, from the point of view of the subcontractors and the architect, was to obtain a definitive adjudication of their respective rights and liabilities resulting from their participation in the project. That objective would be patently frustrated if this litigation were, as appellants would have it, limited only to an adjudication of the rights and liabilities initially asserted, leaving the other parties vulnerable, by way of subsequent action, to additional ultimate responsibility, based on the same performance, for the direct claims between the owner and the general contractor. The architect would be in an even more hapless position, the limit of his exposure to respond in damages for the same alleged error determinable only after multiple litigation.

\*   \*   \*   \*   \*   \*   \*   \*

In this posture Washington Park's assertion of the right to withhold its claims, purportedly against Blanchard but actually against the others, constitutes an unacceptable imposition upon the other parties, the court, and the entire justice system. As inextricably bound as those claims are to the matters which were already placed in controversy and as essential as their assertion was to any final adjudication of that controversy, Washington Park nevertheless has insisted throughout and continues to insist that it was under no compulsion to raise them. As its counsel simply stated on the record when Beach first realized, in 1975, that Washington Park intended to preserve these claims beyond the conclusion of the litigation, "We do not want to assert those claims at this time." The time, however, has long since passed when a litigant has that option.

[*Id.* at 294–95, 375 A.2d 675.]

■ The fact that all parties were joined in the original action makes it clear that all affirmative claims could have and should have been litigated conclusively in a single action. Before he settled, plaintiff had three years to consider his own liability, and that of the other co-defendant. Plaintiff must have perceived a claim for indemnification existed against defendant during this time, but chose not to assert it. Plaintiff's indemnity claim is based on the precise facts underlying the original action. His failure to timely assert a cross-claim has extended this litigation considerably longer than was required, and to allow such a claim now would cause an unnecessary drain on judicial resources. Important objectives of the entire controversy doctrine are to encourage the conclusive determination of a legal controversy in a single action and to promote judicial economy and efficiency by avoiding duplicative litigation. *Mystic Isle, supra,* 142 *N.J.* at 322, 662 A.2d 523. As these objectives would be thwarted by the

reinstatement of plaintiff's claim for indemnity, the trial court's ruling must stand.

Affirmed.